NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PERFECTUS ALUMINUM, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendants-Appellees*

---

2019-2129

---

Appeal from the United States Court of International Trade in No. 1:18-cv-00085-GSK, Judge Gary S. Katzmann.

---

Decided: November 6, 2020

---

THOMAS STEVEN BIEMER, Dilworth Paxson LLP, Philadelphia, PA, argued for plaintiff-appellant. Also represented by JAMES KEVIN HORGAN, ALEXANDRA H. SALZMAN, DeKieffer & Horgan, PLLC, Washington, DC; DAVID JOHN CREAGAN, White & Williams LLP, Philadelphia, PA.

AIMEE LEE, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-

appellee United States.  Also represented by JEFFREY B. CLARK, JEANNE DAVIDSON, LOREN MISHA PREHEIM, Washington, DC; DANIEL CALHOUN, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

ROBERT E. DEFRANCESCO, III, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee Aluminum Extrusions Fair Trade Committee.  Also represented by ALAN H. PRICE, TESSA V. CAPELOTO, CYNTHIA CRISTINA GALVEZ, DERICK HOLT, ADAM MILAN TESLIK, ELIZABETH V. BALTZAN, ELIZABETH S. LEE.

———————————

Before LOURIE, HUGHES, and STOLL, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Perfectus Aluminum, Inc. ("Perfectus") appeals from a decision by the United States Court of International Trade ("Trade Court") sustaining a final scope ruling issued by the United States Department of Commerce ("Commerce"). *See Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ("*Trade Court Decision*").  Commerce held in its final scope ruling that certain aluminum pallets fall within the scope of Commerce's May 2011 antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China.  *See Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Certain Aluminum Pallets* (Dep't of Commerce June 13, 2017) ("*Final Scope Ruling*") (J.A. 19–34).  For the reasons stated below, we *affirm*.

## BACKGROUND

In 2011, Commerce issued an antidumping duty order and a countervailing duty order (the "AD/CVD Orders") on aluminum extrusions from the People's Republic of China. *See Aluminum Extrusions from the People's Republic of*

*China: Antidumping Duty Order*, 76 Fed. Reg. 30650 (Dep't of Commerce May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30653 (Dep't of Commerce May 26, 2011). The scope of the AD/CVD Orders reads, in relevant part:

> The merchandise covered by the order[s] is aluminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 . . . .

AD/CVD Orders, 76 Fed. Reg. at 30650.[1]  Also relevant here, the AD/CVD Orders set forth a specific exclusion from their scope, referred to as the "finished merchandise exclusion," which provides:

> The scope . . . excludes finished merchandise containing aluminum extrusions *as parts* that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

*Id.* at 30651 (emphasis added).

In March 2017, the Aluminum Extrusions Fair Trade Committee ("AEFTC") filed a request asking Commerce to issue a scope ruling finding that 6xxx series extruded aluminum profiles, which are cut-to-length and welded together in the form of pallets, are within the scope of the

---

[1]    For purposes of this appeal, the Antidumping Duty Order and the Countervailing Duty Order are identical in scope.  For ease of reference, we cite the Antidumping Duty Order in the Federal Register.

AD/CVD Orders. [2] In June 2017, Commerce issued its final scope ruling, in which it determined that the Series 6xxx Pallets are within the scope of the AD/CVD Orders. *Final Scope Ruling*, J.A. 19–34.

In its scope ruling, Commerce found that the Series 6xxx Pallets "satisfy the definition of the scope of the [AD/CVD] Orders because they are extruded aluminum profiles consisting of series 6xxx aluminum alloy which are cut-to-length and welded together." *Id.*, J.A. 31. Commerce further explained that, "although the products are identified and referenced by their alleged end use, regardless of whether they are ready for use at the time of importation, this does not remove the products from the scope of the [AD/CVD] Orders." *Id.* Thus, Commerce found that the Series 6xxx Pallets are "included in the [AD/CVD] Orders based on the plain language of the scope." *Id.*

Commerce also considered whether the Series 6xxx Pallets qualify for the finished merchandise exclusion. Commerce determined that, to avoid reading the term "as parts" completely out of the language of the finished merchandise exclusion, that term must mean that "excluded 'finished merchandise' must contain both aluminum extrusions 'as parts' as well as an additional non-extruded aluminum component." *Id.* Moreover, Commerce explained that "an interpretation which would allow products which consist entirely of aluminum extrusions to be excluded from the scope of the [AD/CVD] Orders would allow the finished merchandise exclusion to swallow the rule embodied by the scope." *Id.*, J.A. 32. Commerce concluded that "because the products at issue are only composed of aluminum extrusions, they do not meet the requirements for the finished merchandise exclusion." *Id.*

---

[2]    We refer to these products at issue as the "Series 6xxx Pallets."

Perfectus sought judicial review of the final scope ruling by the Trade Court.  In July 2019, the Trade Court issued its final judgment sustaining Commerce's final scope ruling.  The Trade Court agreed with Commerce's reasoning that the Series 6xxx Pallets fit within the plain language of the AD/CVD Orders and do not qualify for the finished merchandise exclusion. *Trade Court Decision*, 391 F. Supp. 3d at 1353–55.  The Trade Court further held that Commerce acted properly under the regulations set forth in 19 C.F.R. § 351.225 when it issued a scope ruling without initiating a formal scope inquiry.  *Id.* at 1355–56.  Finally, the Trade Court found that Commerce properly issued a scope ruling because the Series 6xxx Pallets were in existence and were not hypothetical products.  *Id.* at 1356–57.

Perfectus appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Upon receipt of an application for a scope ruling, Commerce's inquiry proceeds in steps.  Commerce begins its inquiry by determining whether the scope of the order contains an ambiguity. *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017).  If the scope is unambiguous, it governs.  *Id.*  "Because the meaning and scope of the Orders are issues particularly within Commerce's expertise and special competence, we grant Commerce substantial deference with regard to its interpretation of its own Orders." *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018) (citing *Meridian*, 851 F.3d at 1381–82).  "[Commerce] enjoys substantial freedom to interpret and clarify its antidumping orders." *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002) (quoting *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995)).  "We therefore afford 'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's

interpretation is not 'contrary to the order's terms' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).

After determining whether the scope of the order is unambiguous, Commerce proceeds to the two-step test set forth in 19 C.F.R. § 351.225(k) to determine whether the product at issue is within the scope. First, Commerce considers the scope language contained in the order, as well as the sources identified in § 351.225(k)(1), which are the descriptions contained in the petition and how the scope was defined in the investigation and in determinations issued by Commerce and the International Trade Commission (collectively, the "(k)(1) sources"). *See Whirlpool*, 890 F.3d at 1308 (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015)). If the analysis of the (k)(1) sources is dispositive, Commerce issues a final scope ruling. *Id.*; *see also* 19 C.F.R. § 351.225(d) ("If the Secretary can determine, based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section, whether a product is included within the scope of an order . . . , the Secretary will issue a final ruling as to whether the product is included within the order . . . .").

If Commerce's analysis of the (k)(1) sources is not dispositive, then Commerce must initiate a formal scope inquiry. *See* 19 C.F.R. § 351.225(e) ("If the Secretary finds that the issue of whether a product is included within the scope of an order . . . cannot be determined based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section, the Secretary will notify by mail all parties on the Department's scope service list of the initiation of a scope inquiry."); *see also* 19 C.F.R. § 351.225(c)(2) ("Within 45 days of the date of receipt of an application for a scope ruling, the Secretary will issue a final ruling under paragraph (d) of this section

or will initiate a scope inquiry under paragraph (e) of this section."). During any such formal scope inquiry, Commerce will consider the additional factors set forth in 19 C.F.R. § 351.225(k)(2).

When reviewing a Commerce scope ruling, "[w]e apply the same standard of review as the [Trade Court] . . . , though we give due respect to the [Trade Court]'s informed opinion." *Meridian*, 851 F.3d at 1380–81 (internal quotation marks and citations omitted). "Under that standard, we uphold a Commerce scope ruling that is supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Id.* (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1071 (Fed. Cir. 2001) (internal quotation marks and citation omitted).

Here, Commerce determined based on the (k)(1) sources that the Series 6xxx Pallets are within the scope of the AD/CVD Orders. Commerce issued a final scope ruling, and the Trade Court affirmed. On appeal, Perfectus challenges Commerce's scope ruling on three grounds. For the reasons that follow, we find each challenge unpersuasive.

I

For its first challenge, Perfectus contends that Commerce erred in finding that the Series 6xxx Pallets are within the scope of the AD/CVD Orders. Here, Perfectus makes two alternative arguments. Perfectus first argues that the Series 6xxx Pallets do not qualify as aluminum extrusions within the general scope language of the AD/CVD Orders. Alternatively, Perfectus argues that even if the Series 6xxx Pallets are within the general scope language of the AD/CVD Orders, they meet the requirements for the finished merchandise exclusion and are thus removed from the scope of the AD/CVD Orders. We address each alternative argument below.

A

Regarding the general scope language of the AD/CVD Orders, Commerce found that the Series 6xxx Pallets are within the unambiguous plain language because they are "extruded aluminum profiles consisting of series 6xxx aluminum alloy which are cut-to-length and welded together." *Final Scope Ruling*, J.A. 31. We find no error with that reasonable conclusion, and Perfectus does not dispute it.

Instead, Perfectus argues that the AD/CVD Orders make a "b[r]ight-line distinction" between unfinished parts and finished merchandise, and that Commerce impermissibly expanded the scope of the orders by disregarding that distinction. To support that argument, Perfectus asserts that "the text of the AD/CVD Orders provides that aluminum extrusions are within their scope only if the extrusions are *'parts for final finished products that are assembled after importation*[.]'" Appellant Br. 15 (quoting and adding emphasis to the AD/CVD Orders). But Perfectus truncates the quote from the AD/CVD Orders by omitting the beginning of the sentence, which actually reads:

> *Subject aluminum extrusions <u>may be</u> described at the time of importation as* parts for final finished products that are assembled after importation . . . .

AD/CVD Orders, 76 Fed. Reg. at 30650–51 (emphasis added). Far from indicating that subject merchandise must be "parts for final finished products," the qualifying term "may be" suggests the exact opposite—*i.e.*, that the subject merchandise *need not* be "parts for final finished products."

Moreover, Perfectus disregards the sentences surrounding its truncated quote. For example, the AD/CVD Orders go on to say:

> Such parts *that otherwise meet the definition of aluminum extrusions* are included in the scope.

*Id*. at 30651 (emphasis added). The AD/CVD Orders also say:

> Subject extrusions may be identified with reference to their end use . . . . *Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.*

*Id*. (emphasis added). Again, this language indicates that, contrary to Perfectus's argument, the general scope language is directed at aluminum extrusions generally, without making a bright-line distinction between parts and finished merchandise. Thus, we find no error with Commerce's conclusion, affirmed by the Trade Court, that the Series 6xxx Pallets fall within the general scope language of the AD/CVD Orders.

B

Turning to the finished merchandise exclusion, the language of the AD/CVD Orders states that for a product to qualify for the exclusion it must "contain[] aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry." AD/CVD Orders, 76 Fed. Reg. at 30651. Both Commerce and the Trade Court found that the language "aluminum extrusions *as parts*" means that the finished merchandise exclusion only applies to products that include aluminum extrusion parts and also parts made from other materials that are not aluminum extrusions. *Final Scope Ruling*, J.A. 31–32; *Trade Court Decision*, 391 F. Supp. 3d at 1353–55.

Perfectus argues that the Series 6xxx Pallets meet the only two requirements to qualify for the finished merchandise exclusion, namely, (1) they contain aluminum extrusions as parts and (2) they are permanently assembled and completed at the time of entry. Perfectus argues that Commerce impermissibly narrowed the scope of the exclusion by adding a third requirement that the merchandise also

contain parts composed of material other than aluminum extrusions, a requirement which Perfectus argues does not appear in the language of the AD/CVD Orders. Perfectus relies on this court's decision in *Whirlpool*, 890 F.3d 1302, and the Trade Court's decision in *Rubbermaid Com. Prods. LLC v. United States*, No. 11-00463, 2015 WL 4478225 (Ct. Int'l Trade July 22, 2015), as support for its position that the finished merchandise exclusion applies to products that contain multiple aluminum extrusion "parts," even if there are no parts made from other materials.

The government responds that both Commerce and the Trade Court recognized that if the finished merchandise exclusion were applicable to merchandise made entirely out of aluminum extrusions, then the term "as parts" would be read out of the language, and the exclusion would entirely swallow the rule established by the AD/CVD Orders. The government notes that the *Whirlpool* and *Rubbermaid* cases both involved products that contained aluminum extrusions and other materials, and that dicta from those cases are not controlling here. And the government emphasizes the examples provided in the finished merchandise exclusion—"such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels"—all of which indisputably contain parts made from materials other than aluminum extrusions.[3]

We agree with the government. We find that Perfectus's interpretation would allow the finished merchandise exclusion to swallow the rule established by the AD/CVD Orders and invite abuse. Simply put, the AD/CVD Orders were intended to prevent importers from importing aluminum extrusions from China without paying antidumping

---

[3]    The AEFTC filed a separate responsive brief asserting arguments similar to those made by the government.

duties and countervailing duties. *See generally* AD/CVD Orders, 76 Fed. Reg. at 30650–53. Yet Perfectus argues for an interpretation that would allow a product made entirely from aluminum extrusions to escape the scope of the AD/CVD Orders if it is made from two aluminum extrusion "parts" rather than one aluminum extrusion part. Recognizing that Commerce could not have intended that interpretation when it issued the AD/CVD Orders, Commerce and the Trade Court reasonably read the plain language of the AD/CVD Orders as preventing that result.

Perfectus relies heavily on this court's decision in *Whirlpool*, but that case is not on point. In *Whirlpool*, this court was faced with a narrow question whether the "fasteners exception" in the AD/CVD Orders was limited only to the exclusion for finished goods kits or was also applicable to the finished merchandise exclusion. *Whirlpool*, 890 F.3d at 1310–11. But the *Whirlpool* case involved merchandise composed of aluminum extrusion parts as well as parts made from other materials, and the court made no determination regarding whether a product made entirely from aluminum extrusion parts would be eligible for the finished merchandise exclusion. *See id.* Perfectus's reliance on *Rubbermaid* is similarly unavailing, as the Trade Court in that case elected to not answer this question because the merchandise at issue was also composed of aluminum extrusion parts as well as parts made from other materials. *Rubbermaid*, 2015 WL 4478225, at *3 n.2.

We also find it persuasive that the listed examples in the finished merchandise exclusion are *all* products that contain parts made from other materials that are not aluminum extrusions. In contrast to those listed examples, the Series 6xxx Pallets do not contain any parts made from materials other than aluminum extrusions. We agree with the Trade Court that, while Perfectus emphasizes the undisputed point that the list of examples is not exhaustive, Perfectus fails to demonstrate why products entirely unlike the listed examples should nevertheless be included within

the finished merchandise exclusion.  *See Trade Court Decision*, 391 F. Supp. 3d at 1355.

Giving the proper deference to Commerce's interpretation of its own AD/CVD Orders, *see Mid Continent Nail*, 725 F.3d at 1300, and with due respect to the Trade Court's informed opinion regarding Commerce's final scope ruling, *see Meridian*, 851 F.3d at 1380–81, we agree that in order to qualify for the finished merchandise exclusion a product must include parts made from other materials that are not aluminum extrusions.  Because the Series 6xxx Pallets are made entirely from aluminum extrusion parts, they do not qualify for the finished merchandise exclusion.  Thus, we conclude that the Series 6xxx Pallets are within the scope of the AD/CVD Orders.

II

For its second challenge, Perfectus contends that Commerce erred by issuing a final scope ruling in this case without initiating a formal scope inquiry.  We disagree.

Commerce conducted the analysis prescribed by the regulations and our case law.  Specifically, Commerce determined that the scope of the AD/CVD Orders was not ambiguous.  *Final Scope Ruling*, J.A. 33 ("[T]his scope ruling does not present a situation in which Commerce is clarifying what might be considered in relevant part an ambiguous order."); *see also* J.A. 31–32 (ruling based on the "plain language" of the AD/CVD Orders).  Commerce considered the (k)(1) sources to determine whether the Series 6xxx Pallets were within the scope of the AD/CVD Orders.  *See id.*, J.A. 30 ("The Department examined the language of the [AD/CVD] Orders, the description of the product contained in petitioner's Scope Ruling Request, prior scope rulings, and the Petitions.").  Because Commerce determined that the (k)(1) sources were dispositive as to whether the Series 6xxx Pallets were within the scope of the AD/CVD Orders, Commerce issued a final scope ruling, as required by the regulations.  *See* 19 C.F.R. § 351.225(c), (d).

Perfectus argues that Commerce should have initiated a formal scope inquiry because the AD/CVD Orders are ambiguous. But Perfectus identifies no legal support for the proposition that Commerce must initiate a formal scope inquiry any time the language of an order is arguably ambiguous, or that the question of ambiguity is even material to Commerce's decision on whether to initiate a formal scope inquiry. On the contrary, the regulations indicate that the only relevant question is whether the (k)(1) sources are dispositive. *See* 19 C.F.R. § 351.225(c)–(e). Here, Commerce determined that the (k)(1) sources were dispositive, and at that point Commerce was required to issue a final scope ruling *without* initiating a formal scope inquiry. *Id.* Perfectus is entitled to challenge Commerce's findings on appeal, as it has done. But even if we agreed with Perfectus that the language is ambiguous—which, as explained above, we do not—we still could not conclude that Commerce acted inconsistently with the procedure set forth in the regulations.

Perfectus also argues that Commerce improperly considered materials other than the (k)(1) sources, including representations by AEFTC about entry documentation as well as newspaper reports. But Perfectus cites only the portions of the final scope ruling where Commerce summarized the parties' positions. Perfectus fails to point to any place in the final scope ruling where Commerce actually relied on any materials outside of the (k)(1) sources to support its decision. Therefore, we find no error in Commerce's decision to issue a final scope ruling without initiating a formal scope inquiry.

## III

For its third challenge, Perfectus contends that Commerce should not have issued a scope ruling in this case because there is no evidence that the Series 6xxx Pallets are in current production or importation. Perfectus argues that Commerce deviated from its long-standing policy by

issuing a scope ruling on products that were only shown to be "in existence" even though those products are not "currently in production."

The government responds that there is evidence in the record that the Series 6xxx Pallets exist and have been imported. The government argues that the purpose of Commerce's long-standing practice is to refrain from issuing advisory rulings on hypothetical products that do not yet exist. The government notes Commerce's reasoning in this case that if scope rulings could only be issued on products that were in continuous production, it would create a loophole for importers to avoid scope rulings by strategically starting and stopping production. *See Final Scope Ruling*, J.A. 33.

We agree with the government. Commerce found sufficient evidence in the record demonstrating that the Series 6xxx Pallets exist and are therefore not hypothetical products. Ironically, Perfectus's conduct in continuing to argue this case all the way through this appeal is a fairly strong indication that the impact of Commerce's scope ruling is anything but hypothetical. Thus, we find no error in Commerce's decision to issue a scope ruling on the Series 6xxx Pallets.

## CONCLUSION

We have considered Perfectus's remaining arguments, but we find them unpersuasive. Accordingly, the Trade Court's decision is *affirmed*.

## **AFFIRMED**