# United States Court of Appeals for the Federal Circuit

---

**CHINA CUSTOM MANUFACTURING INC., GREENTEC ENGINEERING LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendants-Appellees*

---

2022-1345

---

Appeal from the United States Court of International Trade in No. 1:20-cv-00121-SAV, Judge Stephen A. Vaden.

---

Decided: March 2, 2023

---

GEORGE REID TUTTLE, III, Law Offices of George R. Tuttle, A Professional Corporation, San Rafael, CA, argued for plaintiffs-appellants. Also represented by GEORGE R. TUTTLE.

JAMIE SHOOKMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee United States. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; SAVANNAH MAXWELL, Office of the Assistant Chief Counsel for Trade

Enforcement and Compliance, United States Department of Commerce, Washington, DC.

ROBERT E. DEFRANCESCO, III, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee Aluminum Extrusions Fair Trade Committee. Also represented by DERICK HOLT, ELIZABETH S. LEE, ALAN H. PRICE, JOHN ALLEN RIGGINS, ENBAR TOLEDANO.

————————————

Before NEWMAN, CHEN, and CUNNINGHAM, *Circuit Judges*.

CHEN, *Circuit Judge*.

China Custom Manufacturing, Inc. and Greentec Engineering, LLC (collectively, CCM) appeal a decision by the United States Court of International Trade (trial court) sustaining a final scope ruling by the Department of Commerce (Commerce) that found CCM's solar panel mounts are subject to antidumping and countervailing duty orders covering aluminum extrusions from the People's Republic of China. Commerce and the trial court concluded that the solar panel mounts are not eligible for the orders' "finished merchandise" exclusion because the mounts are just one component of a downstream product—i.e., a solar panel mounting system. Because the trial court's decision is supported by substantial evidence and is in accordance with law, we affirm.

BACKGROUND

I

In 2011, Commerce issued antidumping and countervailing duty orders covering aluminum extrusions from the People's Republic of China (Orders). Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg. 30,650 (May 26, 2011); Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30,653 (May 26, 2011).

The Orders define as subject merchandise "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from" specified aluminum alloys. Antidumping Duty Order, 76 Fed. Reg. at 30,650.[1] The Orders further provide:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.

*Id.* at 30,650–51. The Orders contain several exclusions from their scope, and two are pertinent here. The "finished merchandise" exclusion states:

> The scope . . . excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with

---

[1]    The Orders recite the same scope, and the language of the Orders is materially the same for present purposes. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1358 (Fed. Cir. 2019); *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1305 n.1 (Fed. Cir. 2018) (citations omitted). Thus, for ease of reference, we cite to only the Antidumping Duty Order.

> glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

*Id.* at 30,651. The "finished goods kit" exclusion states:

> The scope . . . excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit." A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product.

*Id.*

## II

We have interpreted the Orders' scope on multiple occasions, and two of our prior opinions are relevant here. In the first case, we considered the Orders' scope as to the finished merchandise exclusion. There, the plaintiffs argued that their curtain wall units qualified for the finished merchandise exclusion because each unit was fully and permanently assembled and completed upon entry into the United States. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (*Shenyang I*). Commerce disagreed, finding that the curtain wall units were not a "complete product upon entry" and instead were "designed to be attached to other units to eventually form a completed curtain wall." *Id.* The trial court sustained Commerce's determination, explaining that "[c]urtain wall units are [] undeniably components that are fastened together to form a completed curtain wall. Thus, they are 'parts for,' and 'subassemblies' for, completed curtain walls." *Id.* (alterations in original) (citation omitted). We affirmed, holding that "[a] part or subassembly, here a curtain wall unit, cannot be a finished product." *Id.*

In the second case, which again involved curtain wall units, we considered the Orders' scope as to the finished goods kit exclusion. There, the "only remaining issue" was "whether [the curtain wall units] are excluded when viewed (correctly) as subassemblies." *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) (*Shenyang II*). We first agreed with Commerce that the Orders only exclude subassemblies when imported as part of a finished goods kit. *Id.* We then agreed with Commerce that the curtain wall units at issue were ineligible for the finished goods kit exclusion because they were not a "packaged combination" of all the pieces needed to assemble the curtain wall (i.e., the final finished good) at the time of importation and were not ready for installation "as is." *Id.*

Together, these cases explain that (1) parts or subassemblies are not finished products and thus cannot qualify for the finished merchandise exclusion, (2) subassemblies may be excluded from the Orders' scope only if they are imported as part of a finished goods kit, and (3) merchandise qualifies for the finished goods kit exclusion only if it contains a packaged combination of all of the required components at the time of importation and is ready for installation as is.

### III

On October 4, 2019, CCM requested Commerce determine whether its "Rock-it Mount 3.0" solar panel mounts are excluded from the Orders' scope. J.A. 227; J.A. 495. CCM explained that its solar panel mounts are used with other parts and components in a downstream structure, the "EcoFasten 3.0 Rock-it System,"[2] to mount solar panels

---

[2]    CCM's request also refers to the solar panel mounting system as, for example, the "EcoFasten Rock-it 3.0 solar panel mounting system," J.A. 228; the "EcoFasten

on a roof. J.A. 231–35; J.A. 495–97. CCM asserted that its mounts qualify for the finished merchandise exclusion because the mounts are "fully and permanently assembled and complete at the time of entry [and] ready for installation as EcoFasten Rock-It 3.0 solar panel mounting system, a downstream structure." J.A. 228–31.

IV

On May 14, 2020, Commerce issued a final scope ruling that found CCM's solar panel mounts are composed of aluminum extrusions subject to the Orders' scope and that the mounts are ineligible for the finished merchandise and finished goods kit exclusions. J.A. 36, 50, 54–55. According to Commerce, the solar panel mounts "would not constitute finished merchandise because, at the time of entry into the United States, the solar mounts do not constitute a fully and permanently assembled and completed solar panel mounting system." J.A. 52. Instead, the solar mounts "are subassemblies comparable to the merchandise at issue in [*Shenyang I*]" because the mounts "are designed to be part of a downstream final product, just as curtain wall units were designed to be part of the final product, a curtain wall." J.A. 53–54. Thus, Commerce found CCM's solar panel mounts ineligible for the finished merchandise exclusion because "the solar mounts are not themselves finished merchandise which perform a function independent of the complete solar panel mounting system." J.A. 54. Separately, Commerce also determined that the solar panel mounts "do not constitute finished goods kits because, upon entry into the United States, they do not include all parts

---

Rock-It System 3.0," J.A. 230; the "Eco Fasten Rock-it System 3.0," J.A. 495–96; and the "Rock-It System 3.0," J.A. 496. We understand these terms to be interchangeable references to the same solar panel mounting system.

necessary to fully assemble a finished solar panel mounting system." J.A. 52.

## V

CCM sought review by the trial court, arguing that its mounts qualify only for the finished merchandise exclusion and not the finished goods kit exclusion. *China Custom Mfg., Inc. v. United States*, No. 20-cv-00121, 2021 WL 5822715, at *6 (Ct. Int'l Trade Dec. 6, 2021). The trial court affirmed Commerce's final scope ruling, explaining that "Commerce correctly applied the litany of Federal Circuit precedents interpreting the Orders to the solar mounts presented to it for review." *Id.* at *10. Citing CCM's explanation that its solar panel mounts require other components to form the solar panel mounting system, the court concluded that the "solar mounts themselves are not finished merchandise but rather [are] a part or subassembly of the finished merchandise — the solar panel mounting system — and as such do not qualify as finished merchandise excluded from the scope of the Orders." *Id.* (citing *Shenyang I*, 776 F.3d at 1358–59).

CCM timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the trial court's decisions de novo and apply anew the same standard it used. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc) (citations omitted). Under that standard, we "must uphold Commerce's determinations unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id.* (internal quotation marks and citation omitted). Although our review repeats much of the trial court's work, we do not ignore the trial court's informed judgment. *Id.* (citation omitted). We also give substantial deference to Commerce's interpretation of its own duty orders "because the meaning and scope of those orders

are issues particularly within the expertise and special competence of Commerce." *Id.* (cleaned up) (citations omitted). A decision is supported by substantial evidence if "a reasonable mind might accept it as adequate to support a conclusion." *Id.* (cleaned up) (citation omitted).

This appeal is governed squarely by our holding in *Shenyang I* that "[a] part or subassembly . . . cannot be a finished product." 776 F.3d at 1358. CCM conceded to the trial court that its solar panel mounts are parts or subassemblies of its solar panel mounting system. *See* J.A. 1064 ("[T]he Eco Fasten mounts are installed with . . . other identified components and solar panels to function as the downstream solar panel mounting system. . . . The mounts are clearly 'parts' of this solar panel system . . . ."); J.A. 1090 ("[W]hen we refer to the Rocket 3 Solar mounts, we were referring to it as a subassembly, that is, as a part of a greater whole in which it's used."). CCM also conceded that the mounts have no use outside of the specific solar panel mounting system—i.e., the EcoFasten 3.0 Rock-it System. *See* J.A. 1092 ("THE COURT: Does this mount – is it solely for use in the Rocket 3.0 kit? . . . [COUNSEL]: I don't have an answer to that. But I believe that it's useful [in] only the Rocket 3 kit . . . ."). Thus, like the curtain wall units in *Shenyang I*, CCM's solar panel mounts are "undeniably components that are fastened together to form a completed [solar panel mounting system]." 776 F.3d at 1358 (citation omitted). CCM's solar panel mounts are parts or subassemblies and thus cannot be a finished product and cannot qualify for the finished merchandise exclusion.

CCM argues that our holding in *Shenyang I* was limited to the curtain wall units at issue there and cannot be applied to the solar panel mounts at issue here. Appellant's Br. 28; Appellant's Reply Br. 12–13. We disagree. Our holding in *Shenyang I* was based on the language of the Orders. Indeed, the statement that CCM's argument relies on—that a "part or subassembly, here a curtain wall

unit, cannot be a finished product"—is divided into the legal conclusion ("a part or subassembly . . . cannot be a finished product") and the application of that legal conclusion to the facts ("here a curtain wall unit"). 776 F.3d at 1358.

CCM tries to reinforce its argument that *Shenyang I* is not precedential by pointing to a statement by the trial court in an unrelated proceeding that *Shenyang I* did not control the outcome in that specific proceeding. Appellant's Br. 26–28 (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 279 F. Supp. 3d 1209, 1212 n.3 (Ct. Int'l Trade 2017)). CCM misunderstands the trial court's statement. In that case, the plaintiffs argued that their curtain wall units qualified for the finished goods kit exclusion, and defendant-intervenors responded that *Shenyang I* controlled the outcome. *Shenyang*, 279 F. Supp. 3d at 1212 & n.3. The court disagreed with the defendant-intervenors because *Shenyang I* evaluated only the Orders' finished merchandise exclusion and did not address the finished goods kit exclusion. *Id.* at 1212 n.3. Thus, the trial court did not state that *Shenyang I* is not precedential. It stated that the holding of *Shenyang I*, which addressed only the finished merchandise exclusion, did not foreclose the finished goods kit exclusion arguments before it.

Unable to convince us that *Shenyang I* does not apply, CCM asks us to overturn its holding. CCM fails to convince us that we should. CCM initially contends that the holding of *Shenyang I* is "contrary to the plain language of the [finished merchandise] exclusion," which excludes from the Orders' scope "parts" that are "fully and permanently assembled and completed at the time of importation." Appellant's Br. 18–21, 29; Appellant's Reply Br. 5. Not only is this the same argument that the plaintiffs made and that

we rejected in *Shenyang I*, 776 F.3d at 1358, it also misreads the exclusion, which states:

> The scope . . . excludes <u>finished merchandise containing</u> *aluminum extrusions as parts that are fully and permanently assembled* and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

Antidumping Duty Order, 76 Fed. Reg. at 30,651 (emphases added). CCM focuses on the italicized portion and ignores the underlined portion. The Orders exclude finished merchandise *containing* aluminum extrusions as parts that are fully and permanently assembled, not the parts themselves.

CCM also asserts that Commerce rewrote the Orders' plain language when Commerce found that subassemblies cannot be excluded under the finished merchandise exclusion. Appellant's Br. 25; Appellant's Reply Br. 11. CCM again ignores our precedent and misreads the plain language. In *Shenyang I*, we held that subassemblies cannot qualify for the finished merchandise exclusion. 776 F.3d at 1358. We reiterated that holding in *Shenyang II*, where we agreed with "Commerce's straightforward reading" that subassemblies can be excluded only under the finished goods kit exclusion. 918 F.3d at 1367. Further, the Orders' plain language supports our prior decisions, as it states that "[t]he scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise *unless imported as part of the finish goods 'kit'* defined further below." Antidumping Duty Order, 76 Fed. Reg. at 30,651 (emphasis added). A straightforward reading of the plain language confirms, contrary to CCM's argument, that subassemblies are included in the Orders' scope and may be excluded only if imported as part of a finished goods kit.

CCM next avers that Commerce's final scope ruling merged the finished merchandise and finished goods kits exclusions by requiring all EcoFasten components to be fully and permanently assembled at the time of entry, thus requiring a complete "final finished product" for the finished merchandise exclusion rather than a "part." Appellant's Br. 23–24; Appellant's Reply Br. 5–9. First, we fail to see how Commerce merged the two exclusions. Commerce explained that CCM's solar panel mounts (1) were not eligible for the finished merchandise exclusion because the mounts do not constitute a fully and permanently assembled and completed solar panel mounting system, and (2) were not eligible for the finished goods kit exclusion because the mounts do not include, upon entry into the United States, all the parts necessary to fully assemble a finished solar panel mounting system. J.A. 52–53. Thus, Commerce kept the two exclusions separate. Second, Commerce did not err in using the phrase "final finished product" to describe finished merchandise. The Orders use that same phrase to explain that "parts for *final finished products*" are included in the Orders' scope, Antidumping Duty Order, 76 Fed. Reg. at 30,650–51 (emphasis added), and we used a similar term in *Shenyang I* when we explained that a "part or assembly . . . cannot be a *finished product*," 776 F.3d at 1358 (emphasis added). Thus, Commerce did not impermissibly change the word "part" to "final finished product" in the finished merchandise exclusion.

Finally, CCM notes that solar panels are explicitly excluded from the Orders' scope and asserts that Commerce, contrary to the facts of record, erred in finding that solar panels are added after the mounting system was assembled rather than added in an intermediate step in the assembly of the EcoFasten 3.0 Rock-it System. Appellant's Br. 21–23. First, solar panel mounts are undisputedly not solar panels, and thus whatever the Orders may say about solar panels is not material to whether solar panel mounts are excluded. Second, the sequence in which solar panels

are added to the mounting system does not affect our analysis. The solar panel mounts at issue are parts or subassemblies for a downstream product—the EcoFasten solar panel mounting system—and thus are not a finished product that qualifies for the finished merchandise exclusion.

## CONCLUSION

We have considered CCM's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.[3]

## **AFFIRMED**

---

[3] Defendant-Appellee Aluminum Extrusions Fair Trade Committee (AEFTC) moved to strike portions of CCM's corrected opening brief that AEFTC alleged were substantive corrections made without leave of the court. AEFTC's Br. 44–47. At oral argument, AEFTC's counsel stated that the court need not reach the motion to strike if it affirms on the merits. Oral Arg. 32:53–33:22. In light of our decision, AEFTC's motion to strike is denied as moot.