# United States Court of Appeals for the Federal Circuit

---

**WORLDWIDE DOOR COMPONENTS, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES, ENDURA PRODUCTS, INC.,**
*Defendants*

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellant*

---

2023-1532

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00012-TCS, Senior Judge Timothy C. Stanceu.

-------------------------------------------------

**COLUMBIA ALUMINUM PRODUCTS, LLC,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES, ENDURA PRODUCTS, INC.,**
*Defendants*

**ALUMINUM EXTRUSIONS FAIR TRADE**

**COMMITTEE,**
*Defendant-Appellant*

————————————

2023-1534

————————————

Appeal from the United States Court of International Trade in No. 1:19-cv-00013-TCS, Senior Judge Timothy C. Stanceu.

————————————

Decided:  October 8, 2024

————————————

JOHN FOOTE, Kelley Drye & Warren, LLP, Washington, DC, argued for plaintiff-appellee Worldwide Door Components, Inc.  Also represented by MELISSA M. BREWER.

JEREMY WILLIAM DUTRA, Squire Patton Boggs (US) LLP, Washington, DC, argued for plaintiff-appellee Columbia Aluminum Products, LLC.  Also represented by PETER JOHN KOENIG.

ENBAR TOLEDANO, Wiley Rein, LLP, Washington, DC, argued for defendant-appellant.  Also represented by ROBERT E. DEFRANCESCO, III, DERICK HOLT, ELIZABETH S. LEE, ALAN H. PRICE, ADAM MILAN TESLIK.

CLAUDIA BURKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for amicus curiae United States.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, AIMEE LEE, PATRICIA M. MCCARTHY; JONZACHARY FORBES, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

————————————

Before PROST, LINN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

In this consolidated appeal, Aluminum Extrusions Fair Trade Committee (AEFTC) appeals two decisions from the United States Court of International Trade (trial court). In those decisions, the trial court affirmed scope rulings issued under protest by the Department of Commerce (the agency). The scope rulings held that door thresholds imported by Appellees do not fall within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. For the reasons explained below, we reverse the trial court's second remand order and vacate all subsequent opinions.

I

The current appeal addresses whether the products imported by Appellees Worldwide Door Components, Inc. and Columbia Aluminum Products, LLC fall within the scope of existing antidumping and countervailing duty orders.[1]

---

[1]    We note at the outset that, for the purposes of this appeal, we treat Appellees' products as interchangeable. Neither of the two Appellees opposed AEFTC's motion for consolidation, *see* ECF 13 (motion to consolidate); ECF 15 (order granting motion), and the consolidated Appellees submitted a single brief, which nowhere argued that the two companies should be treated differently with respect to the disposition of this case. *See generally* Appellees' Br. Even so, counsel for Columbia seemed to argue for the first time at oral argument that Appellees should be treated differently, asserting that the agency's first remand redetermination considered Worldwide products but failed to consider Columbia products. Oral Arg. at 46:38–48:19, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=2

We begin with a brief explanation of the scope language and the products at issue in this case. We then summarize this case's extensive procedural history before turning to the merits.

A

In 2011, the Department of Commerce issued antidumping and countervailing duty orders on aluminum extrusions from China. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (collectively, the Orders). The scope of the Orders describes the subject merchandise as "aluminum extrusions" that "are shapes and forms, produced by an extrusion process, made from" specified aluminum alloys. *Antidumping Duty Order*, 76 Fed. Reg. at 30,650.[2] Relevant here, the scope language explains what goods may be considered "subject merchandise:"

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation,

3-1532_07112024.mp3. We conclude that, by raising the issue for the first time at oral argument, Columbia failed to preserve this argument and, like previous panels of this court, "we exercise our discretion to find forfeiture." *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1027 (Fed. Cir. 2021) (collecting cases).

[2]    The Orders recite the same scope. *See Meridian Prod., LLC v. United States*, 851 F.3d 1375, 1379 n.4 (Fed. Cir. 2017). *Compare* Antidumping Duty Order, 76 Fed. Reg. at 30,650–51, *with* Countervailing Duty Order, 76 Fed. Reg. at 30,653–54. For ease of reference, we cite only to the scope in the Antidumping Duty Order.

> including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods 'kit' defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.

> Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

*Id.* at 30,650–51. In addition to the stated inclusions, "[t]he scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." *Id.* at 30,651.

Under agency regulations, "[a]n interested party may submit a scope ruling application requesting that the Secretary conduct a scope inquiry to determine whether a product . . . is covered by the scope of an order." 19 C.F.R. § 351.225(c)(1). In August 2017 and March 2018, respectively, Worldwide and Columbia each submitted Scope Ruling Requests to the agency, seeking determinations that their imported door thresholds are not subject to the Orders. J.A. 969. Worldwide argued that its door thresholds are exempt from the Orders under the finished

merchandise exclusion because they (1) are assemblies, containing both extruded aluminum components and non-aluminum components, and (2) are imported fully assembled and ready "for installation within a door frame, or residential or commercial building, without requiring any further finishing or fabrication." J.A. 976; J.A. 988. Likewise, Columbia argued that its door thresholds are exempt from the Orders under the finished merchandise exception because the thresholds are composed of both extruded aluminum components and non-aluminum components and are "ready for use at the time of import and require no further processing or manufacturing." J.A. 996.

Appellant AEFTC was the petitioner in the underlying antidumping and countervailing duty investigations for Appellees' thresholds and submitted comments as a domestic party in the scope ruling proceedings. *See* J.A. 970 n.6. AEFTC subsequently became a party to the case when it intervened in the trial court proceedings to defend the agency's in-scope ruling.

B

1

On December 19, 2018, the agency resolved both Scope Ruling Requests in a single determination. *See Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Final Scope Rulings on Worldwide Door Components Inc., MJB Wood Group Inc., and Columbia Aluminum Products Door Thresholds* (Dep't of Commerce Dec. 19, 2018) (hereinafter, *Original Scope Ruling*); J.A. 969–1006. Pursuant to 19 C.F.R. § 351.225(k)(1), the agency determined that Appellees' door thresholds were covered by the scope of the Orders. After an extensive recitation of Appellees' arguments and a discussion of relevant prior scope rulings, the agency provided three alternative bases for its determination, finding that the thresholds qualified as subject merchandise as either "parts for final finished products,"

"subassemblies," or "extrusions that may be identified with reference to their end-use." J.A. 1000–02. The agency also rejected Appellees' position that the door thresholds were excluded from the Orders under the finished merchandise exception.

First, with respect to "parts for final finished products," the agency found that "that the aluminum extruded components of [Appellees'] door thresholds may be described as parts for final finished products, *i.e.*, parts for doors, which are assembled after importation (with additional components) to create the final finished product, and otherwise meet the definition of in-scope merchandise." J.A. 1001. Next, with respect to subassemblies, the agency found that "the door thresholds, which constitute aluminum extrusion components attached to non-aluminum extrusion components, may also be described as subassemblies pursuant to the scope of the Orders." J.A. 1002. Based on the subassemblies conclusion, the agency noted that the non-aluminum extrusion components of the thresholds would not be included in the scope of the Orders. Finally, the agency concluded that Appellees' products were subject merchandise because the "scope of the Orders also expressly covers aluminum extrusions that may be identified with reference to their end-use, such as door thresholds," "regardless of whether they are ready for use at the time of importation." J.A. 1002. The agency then found that Appellees' reliance on the finished merchandise exception was "inapposite," reasoning that to hold otherwise "would render the express inclusion of 'door thresholds' meaningless." J.A. 1003–04.

2

Appellees appealed the *Original Scope Ruling* to the trial court. On September 14, 2021, the trial court issued opinions for both Worldwide and Columbia, remanding the case back to the agency for further consideration. *See Worldwide Door Components, Inc. v. United States*, 537 F.Supp.3d 1403 (Ct. Int'l Trade 2021) (hereinafter, *First*

*Remand Order*); J.A. 1–17.[3] In the *First Remand Order*, the trial court held that the agency misinterpreted the language of the scope and therefore erred in finding Appellees' door thresholds were covered by the Orders. In the trial court's view, the agency erred when it relied on the scope language stating "[s]ubject aluminum extrusions may be described at the time of importation as parts for final finished products" and "[s]ubject extrusions may be identified with reference to their end use." J.A. 6–8. According to the trial court, "[Appellees'] door thresholds are not 'aluminum extrusions' at the time of importation; rather, they are door thresholds that contain an aluminum extrusion as a component in an assembly." J.A. 7. Therefore, based on its interpretation of the general scope language as excluding assembled goods, the trial court held that such language was "inapplicable to the issues presented by [Appellees'] imported products" and could not be used as the basis for finding the products to be subject merchandise. J.A. 7. During its analysis of the scope language, the trial court acknowledged that the agency made a finding on subassemblies but did not discuss the implications or accuracy of this finding.

The trial court also held that the agency erred in refusing to consider whether Appellees' thresholds satisfied the finished merchandise exception. Because the agency had relied on its interpretation of the "end use" provision to make its finding that the finished merchandise exception

---

[3]    For simplicity, we cite only the agency scope orders and trial court decisions where Worldwide appears as the captioned party. Although the agency and the trial court formally issued separate decisions for both parties in most instances, the pairs of decisions are substantively identical. *See, e.g.*, J.A. 1–17 (trial court's *First Remand Order* for Worldwide); J.A. 104–27 (trial court's *First Remand Order* for Columbia).

was inapplicable, the trial court reasoned that this conclusion must also fail. On remand, the trial court instructed the agency to "give full and fair consideration to the issue of whether this exclusion applies." J.A. 16.

### 3

On remand, the agency again found that Appellees' door thresholds were subject merchandise under the Orders. *Final Results of Redetermination Pursuant to Court Remand; Worldwide Door Components, Inc. v. United States* (Dep't of Commerce Dec 23, 2020) (hereinafter, *First Remand Redetermination*); J.A. 1437–74. At the outset, the agency noted that it disagreed with the trial court's interpretation of the Orders. However, in order to comply with the trial court's order, and "under respectful protest," the agency did not consider whether Appellees' door thresholds were covered by the general scope language as "parts for final finished products" or as "subject aluminum extrusions identified with reference to their end use." J.A. 1450. The agency also disagreed, under respectful protest, with the trial court's conclusion that certain Federal Circuit rulings discussing subassemblies were inapplicable in this case.

Because the trial court did not rule on the agency's determination in the *Original Scope Ruling* that Appellees' door thresholds are subassemblies, the agency once again considered the language's applicability to the merchandise at hand. Like the *Original Scope Ruling*, the agency again found that Appellees' door thresholds can be classified as subassemblies. The agency explained that a subassembly is broadly defined as "partially assembled merchandise," and noted that, "[i]n other words, a subassembly could also be described as an intermediate product or any other partially assembled product that is something less than the full, permanent, and completed final finished product that would satisfy the finished merchandise exclusion." J.A. 1453. In the context of Appellees' door thresholds, the agency found that the thresholds "do not function on their

own, but rather are incorporated into a larger downstream product." J.A. 1459 (explaining that "Worldwide stated that its door thresholds contain all the necessary components for installation within a door frame or residential or commercial building, and provided a report from a testing laboratory documenting how the door thresholds are mounted within door frames and permanent building structures").

With respect to the trial court's order to consider the finished merchandise exception, the agency found that because the door thresholds were subassemblies, they could not also qualify as finished merchandise, since subassemblies and finished merchandise are mutually exclusive categories.

4

Appellees again sought review in the trial court, and the trial court once more remanded for further consideration by the agency. *Worldwide Door Components, Inc. v. United States*, 537 F.Supp.3d 1403 (Ct. Int'l Trade 2021) (hereinafter, *Second Remand Order*); J.A. 19–44. In this opinion, the trial court held that the agency's "new decision impermissibly relies on a factual finding or inference pertaining to [Appellees'] door thresholds that is contradicted by certain evidence on the record and unsupported by any specific evidence that Commerce cited." J.A. 20. Further, the trial court disagreed with the agency's analysis of our precedent and its conclusion that subassemblies and finished merchandise were mutually exclusive categories. J.A. 36 n.5 ("These decisions by the Court of Appeals for the Federal Circuit do not support the Department's position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a 'subassembly.'").

In reviewing the *First Remand Redetermination*, the trial court focused on a passage from the decision where the agency examined record evidence indicating that door units are highly customizable, which might require

additional cutting and machining of the door threshold. The agency determined that this information was consistent with and supported its prior determination that Appellees' door thresholds were not final finished products, but rather an intermediate product that is meant to be incorporated into a larger downstream product. Upon review, the trial court held that this evidence was "contrary to certain record evidence," J.A. 38, including Appellees' description of the door thresholds as "fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building *without any further finishing or fabrication*," J.A. 38 (quoting Worldwide's Scope Ruling Request, emphasis added by trial court). The trial court held that the record evidence "d[id] not constitute substantial evidence to support a conclusion or inference that [Appellees'] door thresholds are so designed and manufactured." J.A. 39. The trial court further explained:

> [B]ecause Commerce relied, at least in part, on this evidence to conclude that the finished merchandise exclusion was not applicable to [Appellees'] door thresholds, the court must remand the agency's decision once again. The issue to which this evidence pertains, i.e., whether [Appellees'] door thresholds are designed and manufactured so as to require cutting or machining prior to use, is directly relevant to the applicability of the finished merchandise exclusion, which pertains to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled *and completed* at the time of entry."

J.A. 39–40 (quoting Antidumping Duty Order, 76 Fed. Reg. at 30,651, emphasis added by trial court).

The trial court also held that the agency did not offer a "plausible explanation of why the articles mentioned in the 'door' and 'window' exemplars of the finished merchandise

exclusion satisfy that exclusion but that [Appellees'] door thresholds, as described in the Scope Ruling Request, do not." J.A. 43. Accordingly, the trial court held that "Commerce did not comply fully with the court's instruction in [the *First Remand Order*] with respect to the finished merchandise exclusion." J.A. 43. The trial court instructed:

> On remand, Commerce must undertake this task again. After reaching a finding from the record evidence that the door thresholds at issue in this case either are, or are not, so designed and produced as to require cutting or machining prior to use, Commerce must consider that finding in deciding anew whether the finished merchandise exclusion applies to the specific door thresholds at issue in this litigation.

J.A. 43–44.

5

Following the *Second Remand Order*, the agency considered, for the third time, whether Appellees' door thresholds meet the definition of finished merchandise. *Final Results of Redetermination Pursuant to Court Remand; Worldwide Door Components, Inc. v. United States* (Dep't of Commerce Sept. 14, 2021) (hereinafter, *Second Remand Redetermination*); J.A. 1589–1604. In the *Second Remand Redetermination*, the agency found, under respectful protest, that Appellees' door thresholds were excluded from the scope of the Orders under the finished merchandise exception. The agency noted its disagreement with nearly all of the *Second Remand Order*'s analysis, but ultimately stated that its new determination was "consistent with the [trial court's] opinion and analysis." J.A 1604. The agency concluded its opinion stating, "[s]hould the Court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly." J.A. 1604.

6

Upon review, the trial court remanded the case back to the agency for the third and final time, finding both procedural and substantive error. *Worldwide Door Components, Inc. v. United States*, 589 F.Supp.3d 1185 (Ct. Int'l Trade 2022) (hereinafter, *Third Remand Order*); J.A. 45–67. With respect to the procedural error, the trial court held that the *Second Remand Redetermination* was "not a decision in a form the court may sustain" due to its phrasing at the end stating "[s]hould the Court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly," because such a determination would not be self-effectuating if the trial court were to affirm the agency. J.A. 60–61 (citing *Second Remand Redetermination*, J.A. 1604). The trial court instructed the agency that it must "issue a third remand redetermination that . . . is a scope ruling or determination for the court's review, and it must be in a form that would go into effect if sustained upon judicial review." J.A. 61. Next, the trial court held that the *Second Remand Redetermination* was substantively flawed because it presented no reasoning for its scope ruling, "other than its incorrect conclusion that the court ordered Commerce to do so." J.A. 61–62. The trial court explained the various ways that it thought the agency had misinterpreted its *Second Remand Order* and identified issues that needed further analysis to be legally sustainable.

7

The agency issued its final redetermination, again finding, under protest, that Appellees' door thresholds are finished merchandise and therefore excluded from the Orders. *Final Results of Redetermination Pursuant to Court Remand; Worldwide Door Components, Inc. v. United States* (Dep't of Commerce Aug. 10, 2022) (hereinafter, *Third Remand Redetermination*); J.A. 1698–1717. The agency noted that, consistent with the *Third Remand Order*, it provided additional explanation for the basis of its

finding. After further discussion of the record, the agency stated, "because we conclude that [Appellees'] door thresholds are: (1) fully assembled and completed at the time of entry; and (2) contain extruded aluminum and nonextruded aluminum components, we find that [Appellees'] door thresholds satisfy the criteria for the finished merchandise exclusion." J.A. 1712. The agency also noted that "[i]f the [trial court] sustains this redetermination, a *Federal Register* notice will be published stating that [Appellees'] door thresholds are excluded from the scope of the *Orders* based on the finished merchandise exclusion" and "instructions will be issued to [Customs and Border Patrol], directing [it] to give effect to this determination as appropriate." J.A. 1717.

8

On appeal for the fourth time, the trial court sustained the agency's scope determination. *Worldwide Door Components, Inc. v. United States*, 606 F.Supp.3d 1363 (Ct. Int'l Trade 2022) (hereinafter, *Final Opinion*); J.A. 68–84. In its *Final Opinion*, the trial court concluded that the agency had complied with the *Third Remand Order* and had "ma[d]e a decision on whether the goods are within the scope of the Orders based on the record as a whole" and "done so . . . in a form the court is able to sustain." J.A. 81. The trial court rejected arguments AEFTC raised on appeal.

AEFTC appeals. We have jurisdiction under 28 U.S.C. § 1581(c).

II

We review the trial court's decisions de novo and apply anew the same standard it used. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc). Under that standard, this court must uphold the agency's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with

law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Sunpreme*, 946 F.3d at 1308. The plain meaning of an antidumping or countervailing duty order, including whether an ambiguity exists with respect to the scope of the order, is a question of law reviewed de novo. *Meridian Products, LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017). In contrast, "[t]he question of whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." *Id.*

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Our review "is limited to the record before Commerce in the particular proceeding at issue and includes all evidence that supports and detracts from Commerce's conclusion." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015). Further, the agency's findings "may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Id.*

## III

On appeal, AEFTC challenges the trial court's remand orders, arguing that the agency's *Original Scope Ruling* was supported by substantial evidence and otherwise in accordance with law. Appellees disagree, asserting instead that the *Original Scope Ruling* is incompatible with our precedent, whereas the *Third Remand Redetermination* is consistent with prior court decisions. The parties present argument with respect to all three bases that the agency considered in the *Original Scope Ruling*, namely, whether Appellees' door thresholds can be considered subject merchandise as (1) "parts for final finished products," (2) products "identified with reference to their end use," or (3) "subassemblies." We begin our discussion with the subassemblies provision of the Orders.

A

In the *Original Scope Ruling*, the agency unquestionably made a finding that Appellees' door thresholds could be considered subassemblies. *See* J.A. 1002 ("Additionally, we find that the door thresholds, which constitute aluminum extrusion components attached to non-aluminum extrusion components, may also be described as subassemblies pursuant to the scope of the *Orders*."). However, the agency did not go further with its subassemblies analysis. Perhaps understandably so, because the primary focus of the *Original Scope Ruling* was the agency's finding that the door thresholds were included within the scope of the Orders under the "end use" provision.

Aside from noting that the agency *did* make a finding about subassemblies, the trial court did not address the accuracy or the sufficiency of the agency's subassembly finding, instead holding that the agency committed reversible error with its interpretation of the other two at-issue provisions of the Orders. J.A. 8 (trial court stating "[a]fter concluding that the 'subassemblies' provision applied to the aluminum extrusion component of each of [Appellees'] door thresholds, the Scope Ruling again misinterpreted a provision within the scope language. . .").

In reviewing the agency's *Original Scope Ruling* anew, we hold that its in-scope determination relying on the subassemblies portion of the Orders is not supported by substantial evidence. The analysis section of the *Original Scope Ruling* dedicated only two sentences to the subassembly finding, neither of which discussed Appellees' door thresholds specifically or explained *why* they should be categorized as subassemblies. Additionally, even though the agency discussed prior relevant scope determinations— some of which resulted in a determination that the merchandise was a subassembly—the agency does not explain why Appellees' door thresholds might be similar to or different from those examples. Further, to the extent that the

agency does discuss Appellees' products, *see* J.A. 1002 (quoting the antidumping and countervailing duty petitioner's argument that "aluminum extrusions are incorporated into window and *door frames and sills*, curtain walls, *thresholds*, and gutters" (emphasis in original)); J.A. 1004 (stating "we find that a door threshold may be described as a part for a door"), it is unclear whether this finding is related to the subassemblies determination, or is a rebuttal to Appellees' arguments about the finished merchandise exception. While the substantial evidence standard of review does not impose a high bar, there must be at least some citation and analysis of the record evidence.

B

Nevertheless, any defect in the agency's subassemblies analysis was cured in the *First Remand Redetermination*, where the agency's analysis was substantially more fulsome.

In the *First Remand Redetermination*, the agency began with an analysis of the scope language, focusing on the interplay between the "subassemblies" portion of the general scope language and the "finished merchandise" exception. The agency noted three particular points: (1) the subassemblies language "is broad enough to cover single aluminum extrusion components that are attached to other aluminum extrusion components, or attached to non-aluminum extrusion components, or some combination thereof, at the time of importation;" (2) "a subassembly could also be described as an intermediate product or any other partially assembled product that is something less than the full, permanent, and completed final finished product that would satisfy the finished merchandise exclusion;" and (3) the subassemblies provision contains a specific reference to the finished goods kit exclusion, "which means that products which satisfy the subassemblies language may, nonetheless, be excluded under the finished goods kit exclusion," however, the subassemblies provision

contains no similar exception for finished merchandise. J.A. 1453–54. Ultimately, the agency concluded that "products that are included in the scope because they satisfy the subassemblies language cannot also be excluded as finished merchandise under the finished merchandise exclusion." J.A. 1454.

Next, the agency turned to the facts of this case. There, the agency found that "the door thresholds constitute 'partially assembled merchandise,' or an intermediate product, and therefore, they are not the fully and permanently assembled and completed final finished product, that would satisfy the finished merchandise exclusion." J.A. 1459. The agency cited record evidence from Appellees, stating that their "door thresholds contain all the necessary components for installation within a door frame or residential or commercial building," and noting that Appellees "provided a report from a testing laboratory documenting how the door thresholds are mounted within door frames and permanent building structures." J.A. 1459. To the agency, this evidence indicated that the "door thresholds do not function on their own, but rather are incorporated into a larger downstream product." J.A. 1459. The agency also noted other record evidence explaining that the door thresholds are "designed for use in 'single or double exterior doors,'" and that "the door thresholds at issue are designed to fit standard door sizes in the United States." J.A. 1459–60.

The *First Remand Redetermination* also addressed Appellees' arguments that the door thresholds should be categorized as finished merchandise because, "according to [Appellees], they are 'finished merchandise' that are 'fully and permanently assembled and completed at the time of entry' and do not require 'further finishing, fabrication or cutting, or repackaging after importation.'" J.A. 1460. Ultimately, the agency rejected Appellees' argument, stating that Appellees' "description of its door thresholds as 'ready for use at the time of import' and requiring 'no further processing or manufacturing' at the time of entry does not

mean that such thresholds constitute finished merchandise under the exclusion." J.A. 1461. The agency found that one of our cases was instructive here, noting that we have affirmed the agency's finding that certain "curtain wall units did not fall within the finished merchandise exclusion because the curtain wall units at issue were subassemblies meant to be fastened together to form a completed curtain wall." J.A. 1460 (citing *Shenyang Yuanda Aluminum Indus. Engr. Co., Ltd. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015)). Next, the agency determined that its analysis was consistent with a previous agency determination where it found that certain door handles were "'subassemblies' that were intended to 'become part of a larger whole' and that therefore, they were not finished merchandise containing extrusions." J.A. 1460–61.

Following the agency's main analysis section of the *First Remand Redetermination*, where it conclusively found that Appellees' door thresholds should be categorized as subassemblies and not finished merchandise, the agency recited and responded to the "Interested Party Comments on Draft Results of Redetermination." *See* J.A. 1463–71. Relevant here, AEFTC and another interested party, Endura Products, Inc., cited additional record evidence, which allegedly constituted substantial evidence for the agency's subassembly finding:

> The petitioner and Endura also submitted information in the underlying scope proceeding demonstrating that door thresholds are highly customizable and generally require further finishing and fabrication before assembly into a finished door unit. Although door thresholds are available in standard lengths, they are generally manufactured to a longer length that is cut or machined according to order-specific requirement.

> Because of the need to customize door thresholds to meet the requirements of a specific door assembly,

> it would not make economic sense to finish customization of a threshold prior to importation, and it is likely that imported door thresholds are further cut to size at the importers' domestic facilities or at pre-hangers' facilities.

J.A.1470. The agency noted that AEFTC's evidence "indicates that the completed door unit is highly customizable, and may require additional cutting and machining of the door threshold." J.A. 1472. The agency ultimately concluded that "the information submitted by [AEFTC] and Endura is consistent with and supports our determination that [Appellees'] door thresholds are not, in and of themselves, final finished products, but are, rather, an intermediate product that is meant to be incorporated into a larger downstream product, which is the finished merchandise." J.A. 1473.

As discussed, *supra* I.B.4., the trial court's *Second Remand* order held that the agency's *First Remand Redetermination* relied on improper inferences or factual findings not supported by the record and that the agency had erred in failing to consider the finished merchandise exception. J.A. 20. For both issues, we disagree.

We begin with the question of whether the agency's subassemblies finding was supported by substantial evidence, and we answer that question in the affirmative. First, the agency engaged in a thorough analysis of the scope language, explaining precisely how it defined a subassembly. Then, based on that discussion, the agency reviewed record evidence—including statements made by Appellees themselves that described the door thresholds as parts that are incorporated into finished door frames—to conclude that the goods at issue meet the definition of a subassembly. The agency even took the additional step of analogizing the door thresholds to other products that had been previously categorized as subassemblies, including curtain wall units and door handles. This is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *See In re Gartside*, 203 F.3d at 1312.

That the trial court may be able to point to certain record evidence that is less persuasive or could support a contrary finding does not make the agency's decision unsupported by substantial evidence. *See Ad Hoc Shrimp Trade Action Comm.*, 802 F.3d at 1348. The trial court seemed to focus on the agency's citation of AEFTC and Endura's record evidence indicating that door units are highly customizable and might require additional cutting and machining of the door threshold. The trial court found that this statement by the agency was contrary to the record evidence where Appellees asserted that the door thresholds are "fully assembled at the time of entry, complete with all of the necessary components to be ready for installation within a door frame, or residential or commercial building *without any further finishing or fabrication*." J.A. 38. We first note that, to us, it does not appear that the agency actually relied on this evidence in making its subassemblies determination. Rather, the agency found that the evidence was "consistent with and supports our determination" that the door thresholds are subassemblies. J.A. 1473. Further, the agency decision acknowledged, and subsequently rejected, Appellees' argument that their door thresholds are finished merchandise because they are "ready for use at the time of import." J.A. 1461. Because the agency found that the door thresholds "must be attached to other components after importation to become part of the downstream product," it concluded that the door thresholds could qualify as subassemblies *even if* they did not require any further finishing after importation. J.A. 1461.

The trial court also took issue with the agency's failure to discuss particular exemplars listed in the finished merchandise exception of the Orders: "[t]he Remand Redetermination does not offer a plausible explanation of why the articles mentioned in the 'door' and 'window' exemplars of

the finished merchandise exclusion satisfy that exclusion but that [Appellees'] door thresholds, as described in the Scope Ruling Request, do not." J.A. 43; *see also* Antidumping Duty Order, 76 Fed. Reg. at 30,651 (listing examples of finished merchandise such as "finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels"). We acknowledge the trial court's concern with line-drawing in the context of these Orders and agree that a discussion distinguishing the categories could have been a helpful addition to the agency's decision. Nevertheless, such an omission does not constitute reversible error. As explained earlier, "whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." *Meridian*, 851 F.3d at 1382.

Finally, we disagree with the trial court's assertion that the agency was required to consider the finished merchandise exception, notwithstanding its finding that the door thresholds were subassemblies. J.A. 36 n.5 (trial court stating that the agency's cited opinions "do not support the Department's position that it need not consider the finished merchandise exclusion if it deems the good at issue to be a 'subassembly'"). In a recent opinion, we firmly foreclosed that position, making clear that "parts or subassemblies are not finished products and thus cannot qualify for the finished merchandise exclusion." *China Custom Mfg. Inc. v. United States*, 61 F.4th 956, 960 (Fed. Cir. 2023); *see also Shenyang Yuanda Aluminum*, 776 F.3d at 1358 ("A part or subassembly, here a curtain wall unit, cannot be a finished product."). Because subassemblies and finished merchandise are mutually exclusive categories for the purpose of the Orders, it was error for the trial court to remand the case back to the agency for failure to consider the finished merchandise exception in light of its subassembly finding.

In sum, to the extent that the agency's in-scope determination relies on the subassemblies provision of the

Orders, we hold that the agency's *Original Scope Ruling* was deficient with respect to its analysis of record evidence. The subassembly determination was therefore not supported by substantial evidence and remand for further consideration was appropriate. The agency subsequently cured any defect with respect to its subassembly findings in the *First Remand Redetermination* by supporting its decision with substantial record evidence. Accordingly, the trial court's second remand order holding otherwise was erroneous.

## IV

The agency's finding that Appellees' door thresholds are subassemblies is an independent basis for sustaining its in-scope determination. Therefore, we need not reach the alternative bases for an in-scope determination that were at issue in the prior proceedings, namely, the "parts for final finished products" and goods "identified with reference to their end use" provisions of the Orders.

For the reasons explained above, we reverse the trial court's *Second Remand Order*, reinstate the non-protested portions of the agency's *First Remand Redetermination*, and vacate the trial court's subsequent opinions and orders in this case.

**REVERSED-IN-PART AND VACATED-IN-PART**

### COSTS

No costs.